IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BOBBY E. LEDBETTER,            )
                               )
            Plaintiff,         )
                               )
       v.                      )    1:06CV239
                               )
THEODIS BECK, et al.,          )
                               )
            Defendants.        )

## RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

Plaintiff is a prisoner of the State of North Carolina, who alleges that he was denied adequate medical treatment. For Defendants, he has named Theodis Beck, Secretary of the Department of Correction, Terry Harvel, Superintendent of the Randolph Correctional Unit, along with the following medical personnel, Dr. Pamela Love, Dr. Sami Hassan, and Nurse Brenda Yuerlton.

Plaintiff states that on June 25, 2004, he got into a fight with another inmate and had his collarbone broken. He claims he was not seen by two nurses, but admits that he was transported to the emergency room at Randolph County Hospital. His right arm was placed in a sling for eight weeks and he was assigned to Dr. Bush at Central Prison. He claims that Dr. Bush recommended that he wear the sling for another eight weeks. After wearing the sling for sixteen weeks, he saw Dr. Love, who stated that she could do nothing else for him and took the sling away. Plaintiff claims he experienced pain in his shoulder and was taken back to Dr. Bush. He was warned by Nurse Yuerlton that he should not fill out sick

call requests in the large amounts he had previously done. He claims that in retaliation, he was transferred to the Albermarle Correctional Center in February 2005. At that institution, Plaintiff saw Dr. Hassan and claimed he was not getting proper medical care. In June 2005, he went back to Central Prison to see Dr. Bush, who allegedly advised Plaintiff that surgery would be needed. Plaintiff claims that on July 10 his medication prescribed by Dr. Bush was changed by Dr. Hassan.

As a result of the above, Plaintiff claims that for a year, he has not been given proper medical care. Two of the Defendants have filed motions to dismiss. These are Drs. Love and Hassan. Theodis Beck, the Secretary of the Department of Correction, and Superintendent Harvel obviously have had no personal connection with this lawsuit. Nevertheless, they have not filed a motion to dismiss. Nor has Nurse Yuerlton filed a motion to dismiss.

Turning to Dr. Love's and Dr. Hassan's motions to dismiss, the following appears. First, Dr. Love wants to dismiss this action for failure to exhaust administrative remedies. Defendant Love shows that Plaintiff filed three grievances concerning medical care, but they did not mention Dr. Love. Consequently, this claims could be dismissed pursuant to 42 U.S.C. § 1997e(a) without prejudice. However, this Defendant has also moved to dismiss for failure to state a claim upon which relief may be granted. Because the complaint fails to allege any violation of Plaintiff's constitutional rights, this dismissal will be with prejudice and

-2-

will save everyone from wasting time should Plaintiff file another grievance and another lawsuit.

Before discussing the reason to dismiss Dr. Love, the Court will set out the steep standard of proof which Plaintiff must meet if he is going to satisfy a claim for denial of medical need by a prisoner. In order for Plaintiff to succeed in this lawsuit alleging lack of medical care, he must show that the defendants were deliberately indifferent to a serious medical need. Mere negligence or malpractice is not enough. Estelle v. Gamble, 429 U.S. 97 (1976)(convict); Johnson v. Quinones, 145 F.3d 164, 166 (4th Cir. 1998); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990)(pretrial detainee).

As stated by the Fourth Circuit in Johnson, 145 F.3d at 167:

> To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298, 111 S.Ct. at 2324; see Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir.1997); Williams, 77 F.3d at 761; Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).
>
> With regard to inadequate medical attention, the objective component is satisfied by a serious medical condition. . . .
>
> The subjective component is satisfied by showing deliberate indifference by prison officials. . . . Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979; see Amos, 126 F.3d at 610 (stating that "prison officials [must] know of and disregard an objectively serious condition, medical need, or risk of harm"). A

-3-

prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844, 114 S.Ct. at 1982; see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997)(holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

In order to meet this standard, Plaintiff must show that the treatment is grossly incompetent or inadequate to the extent that it shocks the conscience and seems fundamentally unfair. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Deliberate indifference is manifested by actual intent or reckless disregard of substantial risks of danger but not mere acts of negligence. Id. For a nurse to be liable, Plaintiff must show a failure to respond to a known medical need. Id.

Supervisors cannot be expected to ensure physicians employ proper procedures and may not be held liable for treatment errors unless it can be shown they tacitly authorized known inadequate procedures. Id.

Plaintiff's complaint wholly fails to allege any improper action by Dr. Love. The most that Plaintiff can say is that after sixteen weeks she removed Plaintiff's arm sling, apparently at the recommendation of Dr. Bush. This fails to show a deliberate indifference to a serious medical need. In his response, the most Plaintiff can state is that "Dr. Love lacked subject matter jurisdiction over the Plaintiff after a retaliatory transfer of the Plaintiff from the Randolph Facility to the Brown Creek Institution." (Docket No. 33.) This statement has nothing to do

-4-

with a denial of medical care claim.  This Defendant's motion to dismiss should be granted for Plaintiff's failure to state a claim upon which relief may be granted.

Dr. Hassan has also filed a motion to dismiss.  Plaintiff's contact with Dr. Hassan began after the transfer of Plaintiff in February 2005. Dr. Hassan points out that Plaintiff's complaint fails to show any deliberate indifference to a serious medical need by Dr. Hassan.  Plaintiff makes some mention of filing a grievance on May 28, 2005, complaining about the nursing staff and Dr. Hassan, but fails to show any deliberate indifference to a serious medical need.  The complaint merely indicates that Dr. Bush had some concern about recommendations missing from the file and that Dr. Hassan changed one of Dr. Bush's prescriptions.  However, nothing in the complaint shows that what Dr. Hassan did amounted to deliberate indifference to a serious medical need.  As stated previously, mere acts of negligence are not covered and Plaintiff does not even show that.

In his response, Plaintiff complains that he numerous times sought attention for medical care from June 2004 through August 2005. He alleges that the physicians conducted x-ray examinations, but concluded that his injury was not serious.  Plaintiff claims that he underwent surgery for a fracture of the collarbone on August 26, 2005.  He states that the doctor should have investigated more thoroughly.

Dr. Hassan replied, stating that he has filed a motion to dismiss and the Court should not consider anything outside of the

-5-

pleadings, and nothing in the pleadings show that Dr. Hassan acted with deliberate indifference to a serious medical need. However, it may be noted that some of the records supplied by Plaintiff reveal that repeated x-rays were ordered and apparently taken. According to Plaintiff, the records also indicate that the physicians who examined Plaintiff found the examinations to be normal. In other words, even if the Court were to consider Plaintiff's records, they would not show a deliberate indifference to a serious medical need and, at most, would show negligence. However, Plaintiff may not recover on that basis. When the record shows that Plaintiff was under constant medical supervision, he likely is not entitled to relief since medical judgments are not normally subject to review. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975).

Plaintiff has cited no facts showing that the Defendants were deliberately indifferent to his situation. In fact, in his own brief, he admits that the physicians conducted x-ray examinations, but still concluded that the injury was not serious. From this, he makes the conclusory observation that Dr. Hassan had knowledge and disregarded the risk to Plaintiff's health. Stripped from all of the conclusory allegations, all Plaintiff is really stating is that Dr. Hassan did not diagnose the injury to Plaintiff's right clavicle, and that in Plaintiff's opinion, the doctor made a mistake. However, nothing in the complaint shows that this "mistake" amounted to negligence, much less that it amounted to a

deliberate indifference to a serious medical need. For this reason, Dr. Hassan must be dismissed as a Defendant as well.

Although the other Defendants have not filed a motion to dismiss, the Court <u>sua</u> <u>sponte</u> takes the opportunity to re-screen the complaint pursuant to 28 U.S.C. § 1915A to see whether the complaint states a claim for relief against them. Plaintiff named Theodis Beck, the Secretary of the Department of Correction, and Terry Harvel, the Superintendent of the Randolph Correctional Institute. However, the complaint fails to mention any personal involvement by them in this case. As stated previously, they may not be held liable merely because they act in a supervisory capacity. Therefore, they should be dismissed pursuant to § 1915A.

The situation is slightly different with respect to Nurse Yuerlton. Nurses often are involved in the medical care of prisoners. However, Plaintiff's complaint fails to show she violated Plaintiff's constitutional rights by depriving him of medical care. The complaint shows the following. Plaintiff had been flooding the Randolph County medical unit with "DC-602" sick call requests. At that point, Nurse Yuerlton warned Plaintiff about the excess and threatened disciplinary action. Before this occurred, Plaintiff was transferred to the Albemarle unit. These facts fail to show that Nurse Yuerlton deliberately denied Plaintiff medical treatment for a serious condition. This Court does not have a duty to conjure up unpleaded facts. <u>Bell Atlantic</u>

-7-

Corp. v. Twombly, ____ U.S. ____, 127 S.Ct. 1955 (2007). Therefore, she also should be dismissed.

**IT IS THEREFORE RECOMMENDED** that Defendant's Dr. Pamela Love's and Dr. Sami Hassan's motions to dismiss for failure to state a claim (docket no. 17 & 23) be granted and that this action be dismissed as to those two defendants.

**IT IS FURTHER RECOMMENDED** that Defendants Theodis Beck, Secretary of the Department of Correction, Terry Harvel, Superintendent of the Randolph Correctional Institute, and Nurse Yuerlton be dismissed <u>sua</u> <u>sponte</u> pursuant to 28 U.S.C. § 1915A for Plaintiff's failure to state a claim for relief against these Defendants and, they being the remaining Defendants, that this action be dismissed.

                                           /s/ Russell A. Eliason
                                       **United States Magistrate Judge**

July 26, 2007